UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ZAKKYAH M. MCNEIL,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:16-cv-162

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 6), the Commissioner's memorandum in opposition (doc. 8), Plaintiff's reply (doc. 9), the administrative record (doc. 5),[2] and the record as a whole.

**I.**

**A.    Procedural History**

Plaintiff filed an application for SSI on August 22, 2011 (PageID 295-301) alleging disability as a result of a number of alleged impairments including, *inter alia*, diabetes mellitus, a

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

lumbosacral strain, a cataract in the left eye, obesity, borderline intellectual functioning ("BIF"), depression, and anxiety. PageID 66.

After initial denial of her application, Plaintiff received a hearing before ALJ Paul Armstrong on February 8, 2013. PageID 110-32. ALJ Armstrong issued a written decision on March 13, 2013 finding Plaintiff not disabled. PageID 164-77. The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ. PageID 183-85. On remand, Plaintiff received a second hearing before ALJ Gregory Kenyon on November 24, 2014. PageID 84-109. ALJ Kenyon issued a written decision on February 17, 2015 finding Plaintiff not disabled. Doc. 64-77. Specifically, ALJ Kenyon found at Step Five that, based upon Plaintiff's RFC to perform a reduced range of light work,[3] "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]" PageID 69-76.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ Kenyon's non-disability finding the final administrative decision of the Commissioner. PageID 46-48. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

**B.     Evidence of Record**

The evidence of record is adequately summarized in ALJ Kenyon's (hereinafter "the ALJ") decision (PageID 66-76), Plaintiff's Statement of Errors (doc. 6), the Commissioner's memorandum in opposition (doc. 8), and Plaintiff's reply (doc. 9). The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. § 416.967(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id*. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. § 416.967(a).

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff purports to assert a single alleged error arguing that the ALJ improperly assessed her credibility. Doc. 6 at PageID 950, 962. However, under that single alleged error, Plaintiff actually sets forth a number of separate alleged errors, including the assertion that the ALJ erred in: (1) evaluating Plaintiff's mental impairments under Listing § 12.05(C); (2) rejecting the opinion of examining psychologist Gordon Harris, Ph.D. without adequate explanation; and (3) improperly assessing the severity of her eye impairment during a closed period of disability. Doc. 6 at PageID 962-67. The undersigned addresses each of these alleged errors herein.

## A. Listing § 12.05(C)

Plaintiff first argues that the ALJ erred in concluding that her impairments do not meet or medically equal Listing § 12.05(C) at Step Three. Doc. 6 at PageID 963.

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted). "Because satisfying the [L]istings yields an automatic determination of disability . . . the evidentiary standards [at Step Three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).

Plaintiff has the burden of proving that she meets or equals all of the criteria of a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). To demonstrate disability under Listing § 12.05(C), Plaintiff must establish: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning[4] initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Golden v. Comm'r of Soc. Sec.*, 591 F. App'x 505 (6th Cir. 2015) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)).

Here, in finding that Plaintiff did not meet the requirements of Listing § 12.05(C), the ALJ noted that Plaintiff's full scale IQ of 70 met one of the requirements of the Listing, but concluded that Plaintiff's academic history and adaptive skills did not meet the Listing requirements. PageID 69. The ALJ cited Plaintiff's school records showing that, at age 14, she

---

[4] While Listing § 12.05 does not define "adaptive functioning," another portion of the Listings defines "adaptive activities" as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1).

5

performed at average "except math." PageID 422. Although not specifically cited by the ALJ, other school records reflect that Plaintiff was "achieving at expectancy in math, and above expectancy in reading and spelling." PageID 413, 427. While Plaintiff challenges the ALJ's finding regarding her average academic performance, she cites no evidence to support her conclusory contention. Absent some developed argumentation, the undersigned finds the ALJ's conclusion in this regard supported by substantial evidence.[5]

Plaintiff also presents no specific argument concerning the ALJ's conclusion that "[t]he evidence as a whole . . . does not demonstrate deficits in adaptive functioning consistent with listing-level intellectual disability." PageID 69. In this regard, the ALJ found Plaintiff failed to meet or equal the Listing criteria because she was "capable of taking public transportation" and doing "minor housework including sweeping and washing dishes."[6] *Id*. The ALJ also pointed to Plaintiff's part-time work as a cashier in finding that Plaintiff's adaptive functioning skills did not meet or equal the Listing requirements. *Id*. Absent developed argumentation to by Plaintiff to the contrary, the undersigned concludes that the ALJ's conclusions in this regard are supported by substantial evidence.

Based on the foregoing, Plaintiff's alleged error regarding Listing § 12.05(C) is without merit and should be overruled.

**B.  Dr. Harris**

Plaintiff also argues that the ALJ erred in assessing the opinion of examining psychologist Dr. Harris, whose opinion was assigned "moderate weight." Doc. 6 at PageID 964;

---

[5] Plaintiff also alleges that the ALJ erred in the Listings analysis by relying on Plaintiff having obtained a GED. Doc. 6 at PageID 963. Plaintiff's testimony as to whether or not she obtained her GED is not entirely clear. *See* PageID 90, 99. Even assuming, *arguendo*, that the ALJ erred in finding Plaintiff obtained her GED, any such error is harmless, given that the other reasons advanced by the ALJ are supported by substantial evidence.

[6] Notably, examining clinical psychologist Giovanni Bonds, Ph.D further noted that Plaintiff "does routine personal care tasks . . . [and] is able to shop, pay bills and go to places independently." PageID 472.

6

*see also* PageID 74. In cases like this, where there are no treating source opinions of record, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 416.927(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairments. In this case, Plaintiff specifically argues that the ALJ "gave no good reason for rejecting the favorable findings" set forth in Dr. Harris's report. *Id.*; *see also* PageID 614-18.

Dr. Harris met with Plaintiff on May 9, 2012 and, following a psychological evaluation, concluded that Plaintiff "appeared to have no difficulty understanding instructions"; exhibited slow "pace of speech and performance of cognitive tasks[,]" meaning that "her persistence was good" but "her ability to perform some simple tasks, as well as multi-step tasks, [was] limited"; had "no significant problems which would impair her ability to relate to supervisors or co-workers"; and was limited in "her ability to deal with workplace stressors." PageID 617-18. Dr. Harris also assigned Plaintiff a Global Assessment of Functioning ("GAF")[7] score of 40 -- a score the ALJ found inconsistent with Plaintiff's overall level of functioning. PageID 617.

In giving Dr. Harris's opinion "moderate weight[,]" the ALJ "accommodated" Plaintiff's limitations in "attention, concentration, persistence, and pace[,]" as well as her limitation in "stress tolerance" in the RFC finding. PageID 74-75. Specifically, the ALJ found Plaintiff limited to "unskilled, simple, repetitive tasks"; "occasional contact with coworkers and supervisors"; "no public contact"; "no fast paced production work or jobs involving strict

---

[7] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). As set forth in the DSM-IV, however, a GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)." DSM-IV at 34.

7

production quotas"; and work "in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from" day to day. PageID 75. Plaintiff fails to articulate how these limitations do not adequately address the level of impairment identified by Dr. Harris. Thus, it is not clear to the undersigned how the ALJ's weighing of Dr. Harris's opinion prejudiced Plaintiff and, absent specific articulation by Plaintiff in this regard, the Court finds no merit to her argument.

Insofar as Plaintiff challenges the ALJ's assigning of "little weight" to Dr. Harris's GAF assessment, the Court finds no error. No "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citation omitted). "GAF scores, while perhaps helpful in assessing a [S]ocial [S]ecurity claimant's level of functioning, provide only a 'snapshot' of that functioning and do not correlate directly to the disability criteria used by the Social Security Administration." *Seymour v. Comm'r of Soc. Sec.*, No. 2:16-CV-0744, 2017 WL 2471021, at *5 (S.D. Ohio June 8, 2017).

### C. Vision Impairment

Plaintiff also alleges error in the ALJ's assessment of her vision impairment. Plaintiff contends that the ALJ erred by not considering that, at the administrative hearing, she requested the ALJ to consider awarding benefits to her for a closed period ending approximately March 2014, *i.e.*, a period ending after she underwent eye surgery and her vision improved. Doc. 6 at PageID 967; *see also* PageID 88. Contrary to Plaintiff's contention, the ALJ did consider the proposed closed period and assessed Plaintiff's RFC both before and after April 1, 2014, *i.e.*, before and after undergoing eye surgery. PageID 69-76.

In determining Plaintiff's vision limitations before April 1, 2014, the ALJ relied on the opinion of record-reviewing physician Eli Perencevich, D.O., who concluded that Plaintiff "should avoid driving and working around heavy machinery[,]" "reading fine print[,]" and

8

working around unprotected heights. PageID 139. Plaintiff cites no evidence of record, particularly medical source opinion evidence, suggesting that her work-related limitations are more severe than those ultimately found by the ALJ.

As a result, the undersigned finds the ALJ's conclusions concerning Plaintiff's vision impairment is supported by substantial evidence and that Plaintiff's alleged error in this regard is without merit.

### D. Credibility

The Court last addresses Plaintiff's credibility argument. In this regard, Plaintiff argues that the ALJ erred in relying on her poor compliance with medical treatment and her activities of daily living in finding her not entirely credible. Doc. 6 at PageID 964, 966.

The ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). A reviewing Court must "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

Nevertheless, in setting forth a credibility finding, the ALJ's determination "cannot be based on an intangible or intuitive notion about an individual's credibility[,]" and instead, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). In fact, the ALJ must set forth "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

At the outset, the undersigned finds no merit to Plaintiff's contention regarding the ALJ's assessment of her daily activities. Doc. 6 at PageID 966-67. A review of the ALJ's decision reveals little reliance by the ALJ on Plaintiff's daily activities in assessing her credibility and RFC. *See* PageID 70-75. Insofar as Plaintiff challenges the ALJ's discussion of her daily activities when analyzing whether she met or equaled Listing § 12.05(C), the Court addressed such argument *supra*.

On the other hand, it is evident that, in finding Plaintiff not entirely credible, the ALJ relied significantly on Plaintiff's failure to follow treatment recommendations and consistently take medication to control her diabetes. *See* PageID 77-74. Certainly, "medical record[s] demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms[.]" SSR 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996). However, an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Id*. Where noncompliance is shown in the record, an ALJ must not, however, draw negative inferences from such noncompliance "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id*.[8]

---

[8] Following issuance of the ALJ's decision in this case, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016). SSR 16-3p, however, did "not alter the rule that the ALJ should consider 'possible reasons' why a claimant failed to seek medical treatment . . . before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). Similar to SSR 96-7p, SSR 16-3p states that an ALJ cannot "find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record" based on a plaintiff's noncompliance "without considering possible reasons" for the noncompliance. *See* SSR 16-3p, 2016 WL 1119029, at *8.

The evidence of record here suggests that Plaintiff's poor compliance with treatment recommendations may have less to do with the severity of her symptoms, and more to do with her borderline intellectual functioning. Such a concern is specifically noted in Plaintiff's medical records, wherein medical professional expressed concern that Plaintiff's "poor insight" and a lack of "judgment" resulted in her noncompliance. PageID 645, 812. There is also evidence that Plaintiff's failure to timely refill prescription medication was the result of financial concerns. PageID 645. The ALJ did not specifically consider these reasons when minimizing Plaintiff's credibility. The ALJ's failure in this regard is error and, because Plaintiff's noncompliance factored significantly in the ALJ's decision, such error is not harmless.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). In this case, the evidence of disability is not overwhelming. Therefore, a remand for further proceedings is proper.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date: August 3, 2017                              s/ Michael J. Newman
                                                  Michael J. Newman
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).